## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| THOMAS BOCK, Individually and on Behalf of All Others Similarly Situated, | CASE NO: 1:19-cv-1163 |
| | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION (29 U.S.C. § 216(b)) |
| SALT CREEK MIDSTREAM LLC | CLASS ACTION (Fed. R. Civ. P. 23) |

### ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1. Plaintiff Thomas Bock brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* ("NMMWA") against Defendant Salt Creek Midstream LLC (Salt Creek).

2. Bock and the other workers like him regularly worked for Salt Creek in excess of 40 hours each week.

3. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA and NMMWA, Salt Creek paid these workers a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

#### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

8. Bock worked for Salt Creek in this District in Eddy and Lea Counties, New Mexico.

## THE PARTIES

9. Bock has been performing work for Salt Creek as a coating inspector from approximately April 2019 through the present. Throughout his time with Salt Creek, he has been paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as Exhibit A.

10. Bock represents at least two classes of similarly situated co-workers

11. First, Bock brings this action on behalf of himself and all other similarly situated workers paid by Salt Creek's day-rate system. Salt Creek paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. The FLSA class of similarly situated workers consists of:

> **Current and former inspectors employed by or performing work on behalf of Salt Creek Midstream LLC and paid a day-rate without overtime during the past three years.** (the Putative Class Members).

12. Second, Bock represents a class of similarly situated inspectors under the NMMWA pursuant to Federal Rule of Civil Procedure 23. The NMMWA Class is defined as:

> **Current and former inspectors employed by or performing work on behalf of Salt Creek Midstream LLC in New Mexico and paid a day-rate without overtime during the past three years.**

13. Salt Creek Midstream LLC is a company doing business throughout the United States. Salt Creek may be served by serving its registered agent for service of process: CT Corporation System, 206 S. Coronado Ave., Espanola, New Mexico 87532.

## COVERAGE UNDER THE FLSA

14. For at least the past three years, Salt Creek has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. For at least the past three years, Salt Creek has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. For at least the past three years, Salt Creek has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

17. For at least the past three years, Bock and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

18. Salt Creek "is in the midst of a big Permian buildout focusing on natural gas, crude oil, natural gas liquids and even produced water. Salt Creek isn't only developing local midstream infrastructure; it's also at work on long-haul solutions that will enable Permian producers to access markets along the Texas Gulf Coast. […] Salt Creek has built out gas gathering systems in Eddy and Lea counties in New Mexico, and Culberson, Reeves, Winkler, Ward and Pecos counties on the Texas side. The 325-mile network, about half of which is already in service, has pipe ranging from 8

to 30 inches in diameter and the capacity to transport up to 1.2 Bcf/d of rich gas to Salt Creek's cryogenic processing plants."[1]



19. The vast amount of pipeline involved in its projects necessitates the use of welding, coating, and pipeline inspectors throughout the construction and production process.

20. Many of these inspectors worked for Salt Creek on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these inspectors are subjected to the same or similar illegal pay practices for similar work. Specifically, Salt Creek paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

---

[1] https://www.armenergy.com/happy-together-salt-creek-midstreams-integrated-permian-strategy/ (Last visited November 10, 2019).

21. For example, Bock worked for Salt Creek starting in March 2019 through the present as a coating inspector. Throughout his time with Salt Creek, he was paid on a day-rate basis.

22. As a coating inspector, Bock's primary job duties included inspecting the coatings on oil and gas pipelines and other constructions projects as needed. Bock worked well in excess of 40 hours each week while employed by Salt Creek.

23. The work Bock performed was an essential part of Salt Creek's core business.

24. These workers carry out the hands-on, day-to-day production work of Salt Creek.

25. Workers like Bock are an integral part of the work Salt Creek does.

26. To the extent employees make "decisions," the decisions do not require the exercise of independent discretion and judgment.

27. Instead, Salt Creek employees apply well-established techniques and procedures. The daily report submitted by Bock to his supervisors is generated and required by Salt Creek. Bock and the other inspectors' supervisors are Salt Creek employees. The assignments and schedules for Bock and the other inspectors are created and assigned by Salt Creek. The timesheets that Bock and the inspectors submit to be paid are approved and audited by Salt Creek.

28. Inspectors are not permitted to deviate from established quality standards.

29. These workers are blue collar. They rely on their hands, physical skills, and energy to perform manual labor in the field.

30. With these job duties, these employees are clearly **non-exempt** under the FLSA.

31. Salt Creek paid Bock and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

32. Bock was paid on a day-rate basis throughout his time with Salt Creek.

33. Bock and the Putative Class Members were not paid a salary.

34. Bock and the Putative Class Members were not guaranteed a predetermined amount above $455.00 per week.

35. Salt Creek typically scheduled Bock to work 10-12 hour shifts, for as many as 6-7 days a week.

36. But Salt Creek did not pay Bock overtime.

37. Bock and the Class Members worked for Salt Creek over the past three years across the United States.

38. As a result of Salt Creek's pay policies, Bock and the Class Members were denied the overtime pay required by federal law.

39. Salt Creek keeps accurate records of the hours, or at least days, its employees work.

40. It also keeps accurate records of the amount of pay these workers receive.

41. Despite knowing the FLSA requirements and that its inspectors regularly worked more than 40 hours in a workweek, Salt Creek does not pay them overtime.

42. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

43. The Putative Class Members regularly worked in excess of 40 hours each week.

44. Like Bock, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

45. Salt Creek did not pay Bock on a salary basis.

46. Salt Creek did not pay the Putative Class Members on a salary basis.

47. Salt Creek paid Bock on a day-rate basis.

48. Salt Creek paid the Putative Class Members on a day-rate basis.

49.     Despite knowing the FLSA and NMMWA's requirements, Salt Creek failed to pay Bock and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

**FLSA VIOLATIONS**

50.     Bock incorporates the preceding paragraphs by reference.

51.     As set forth herein, Salt Creek violated the FLSA by failing to pay Bock and the Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

52.     At all relevant times, Salt Creek has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

53.     Salt Creek employed Bock and each member of the Class.

54.     Salt Creek's pay policy denied Bock and the Class Members overtime compensation at the legal overtime rates required by the FLSA.

55.     Salt Creek owes Bock and the Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

56.     Salt Creek knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Bock and the Class is willful.

57.     Due to Salt Creek's FLSA violations, Bock and the Class Members are entitled to recover from Salt Creek for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

58.     The improper pay practices at issue were part of a continuing course of conduct, entitling Bock and Class Members to recover for all such violations, regardless of the date they occurred.

## NMMWA VIOLATIONS

59. Bock brings this claim under the NMMWA as a Rule 23 class action.

60. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

61. At all relevant times, Salt Creek was subject to the requirements of the NMMWA.

62. At all relevant times, Salt Creek employed Bock and each Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

63. The NMMWA requires employers like Salt Creek to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Bock and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

64. Salt Creek had a policy and practice of misclassifying Bock and each member of the New Mexico class as exempt and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

65. Bock and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

66. Bock and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Salt Creek, as provided by the NMMWA.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

67. Bock incorporates all previous paragraphs and alleges that the illegal pay practices Salt Creek imposed on them were likewise imposed on the members of the class.

68. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

69. Numerous other individuals who worked with Bock indicated they were

improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

70. Based on his experiences and tenure with Salt Creek, Bock is aware that Salt Creek's illegal practices were imposed on the members of the class.

71. Salt Creek used day rate contractors across the United States.

72. The members of the class were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

73. Salt Creek is the true employer of Bock and the Putative Class Members.

74. Salt Creek's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the class.

75. Bock's experiences are therefore typical of the experiences of the members of the class.

76. The specific job titles or precise job locations of the various members of the class do not prevent class or collective treatment.

77. Bock has no interests contrary to, or in conflict with, the members of the class. Like each member of the class, Bock has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

78. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

79. Absent this action, many members of the class likely will not obtain redress of their injuries and Salt Creek will reap the unjust benefits of violating the FLSA and the NMMWA.

80. Furthermore, even if some of the members of the class could afford individual litigation against Salt Creek, it would be unduly burdensome to the judicial system.

81. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

82. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Salt Creek employed the members of the class within the meaning of the FLSA and the NMMWA;

   (b) Whether the members of the class were improperly misclassified as exempt;

   (c) Whether Salt Creek's decision to classify the members of the class as exempt was made in good faith;

   (d) Whether Salt Creek's decision to not pay time and a half for overtime to the members of the class was made in good faith;

   (e) Whether Salt Creek's violations of the FLSA was willful; and

   (f) Whether Salt Creek's illegal pay practices were applied uniformly across the nation to all members of the class.

83. Bock's claims are typical of the claims of the members of the class. Plaintiffs and the members of the class sustained damages arising out of Salt Creek's illegal and uniform employment policy.

84. Bock knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

85. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

86. Bock demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray for judgment against Salt Creek as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding Salt Creek liable for unpaid back wages, and an equal amount of liquidated damages, due to Bock and the class members;

(c) For an order designating the state law classes as class actions pursuant to FED. R. CIV. P. 23;

(d) For an order awarding Bock and the class members the costs of this action;

(e) For an order awarding Bock and the class members their attorneys' fees;

(f) For an order awarding Bock and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

(g) For an order awarding Bock and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(h) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Richard Burch*
Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Michael A. Josephson
State Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
State Bar No. 24078444
adunlap@mybackwages.com

       **JOSEPHSON DUNLAP**
       11 Greenway Plaza, Suite 3050
       Houston, Texas 77046
       713-352-1100 – Telephone
       713-352-3300 – Facsimile


      **ATTORNEYS IN CHARGE FOR PLAINTIFF**