UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| THOMAS BOCK, Individually and on Behalf of Others Similarly Situated,<br><br>v.<br><br>SALT CREEK MIDSTREAM, LLC | Case No.: 2:19-cv-01163-WJ-GJF<br><br>Jury Demanded<br><br>Collective Action (29 U.S.C. § 216(b))<br>Class Action (Fed. R. Civ. P. 23) |

PLAINTIFFS' OPPOSITION TO
KESTREL'S MOTION TO COMPEL ARBITRATION

**A.      Summary.**

Plaintiffs sued Salt Creek Midstream, LLC (Salt Creek) for violating the overtime provisions of the Fair Labor Standards Act (the FLSA) and the New Mexico Minimum Wage Act (NMMWA). Kestrel Field Services, Inc. (Kestrel), a non-party to this case and an entity Plaintiffs do not even mention in their complaint, seeks to compel Plaintiffs to arbitrate their FLSA and NMMWA claims against Salt Creek – a company who is not a party to Kestrel's arbitration agreement. Indeed, Plaintiffs never agreed to arbitrate anything with Salt Creek. Unlike Salt Creek,[1] Kestrel does not argue that some extra-contractual principle (such as estoppel) operates to require Plaintiffs to arbitrate their claims. Rather, Kestrel argues that its arbitration agreement – as written – covers Plaintiffs' claims against Slat Creek. Kestrel's tortured textual reading cannot be sustained.[2] The Court should,

---

[1]   *See*, *generally*, Dkt. No. 36.
[2]   Indeed, Salt Creek does not adopt Kestrel's argument that, as written, Kestrel's arbitration agreement contemplates arbitration against Salt Creek. Salt Creek, instead, relies upon theories of equitable estoppel in order to bootstrap itself into Kestrel's arbitration agreement. *See*, *generally*, Dkt. No. 36.

1

therefore, deny Kestrel's motion to compel arbitration.[3]

**B.      Legal STANDARD.**

The Federal Arbitration Act, indeed, evinces a strong policy on the part of Congress in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). At its core arbitration is, and always has been, a matter of consent, not coercion. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

Kestrel implores the Court to apply this liberal presumption in favor of arbitration to conclude that its arbitration agreement is broad enough to encompass disputes against (or, for that matter, by) complete strangers to the arbitration agreement. Kestrel goes to great lengths to argue that, because its arbitration agreements refer to all "controversies" and "disputes" – rather than being limited to merely "claims" – this language somehow encompasses any "controversy" or "dispute" regardless of who the opposing party might be. To wit, Kestrel sums up its voluminous by stating: "Applying the rules of contract interpretation, 'controversies' must mean something other than 'claims' in the Arbitration Agreements." Dkt. No. 44, p. 9. This conclusion is the underpinning of Ketstrel's entire argument that, as written, its arbitration agreement covers Salt Creek. The Tenth Circuit squarely disagrees with Kestrel's reading. *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1198 n.7 (10th Cir. 2009) (in an arbitration agreement the term "controversy" is no broader than the term "claim") (citing *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861 (10th Cir. 1999)).

---

[3]     Plaintiffs incorporate their Opposition to Kestrel's Motion to Intervene [Dkt. No. 42] and their Opposition to Salt Creek's Motion to Compel Arbitration [Dkt. No. 57] for all purposes as if set out here in its entirety.

2

Properly framed, then, the question before the Court is who must arbitrate rather than what claims or controversies must be arbitrated. *Weckesser v. Knight Enterprises S.E., LLC*, 2018 WL 2972665, *4 (4th Cir. Jun. 12, 2018)(holding the presumption in favor of arbitration does not apply to the issue of whether an agreement to arbitrate exists between the parties). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). In fact, the existence of a valid arbitration agreement and the interpretation of a valid arbitration agreement's scope are two separate inquiries. *Id.* The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018). Therefore, the question before the court is not what claims or controversies Plaintiffs agreed to arbitrate, but with whom they agreed to arbitrate any such claims or controversies.

Thus, when, as here, "'the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.'" *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017)(quoting *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998))(other citations omitted). Kestrel, as the party seeking to compel arbitration, has the burden to show that the arbitration agreement covers claims against a non-signatory. *Jacks*, 856 F.3d at 1304 (citing *Hancock v. American Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). In analyzing this question courts apply state-law principles that govern the formation of contracts. *Jacks*, 856 F.3d at 1304 (citing *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)).

C. **ARGUMENT AND AUTHORITY.**

    1. **Texas law should apply to whether Salt Creek may enforce Kestrel's arbitration agreement.**

Kestrel presumes, without analysis, that New Mexico law applies to the question of whether its arbitration agreement with Plaintiffs is enforceable here as written. In fact, however, a New Mexico court would likely apply Texas law. This Court should do likewise.

"As a general proposition of law, it is settled that the validity of a contract must be determined by the law of the state in which it was made." *Flemma v. Haliburton Energy Servs., Inc.*, 303 P.3d 814, 819 (N.M. 2013). A unilateral contract is one in which the offeree accepts the offer by undertaking the requested performance. *Id.* In New Mexico, an at-will employee accepts an arbitration agreement by commencing or continuing employment after receiving notice of the agreement. *See Id.*; *see also, Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996)(at-will employee accepted offer of employment when "he proceeded to carry out the specific tasks required of him in service of the [employer].").

Salt Creek does not quarrel that Plaintiffs' employment arrangement with Kestrel was at-will. *See* Dkt. No. 36, p. 4 ("Kestrel hired Plaintiffs as at-will employees."). Kestrel's arbitration agreement makes this point clear.[4] Kestrel's arbitration agreement also specified the manner of acceptance – continuing employment after receipt of the agreement.[5] According to Salt Creek, Plaintiffs were hired to work on Salt Creek's pipeline project in Reeves Cunty, Texas. Dkt. No. 36, p. 3. Thus, as a matter of New Mexico law, Plaintiffs accepted Kestrel's arbitration agreement by commencing or continuing their employment in Reeves County, Texas. *See*, *Flemma*, 303 P.3d 814 at 819. As a result, under New

---

[4] *See* Salt Creek's motion, Dkt. No. 36-10, Exhibit C-1, p. 2 ("11. AT-WILL EMPLOYMENT. This Agreement does not alter the 'at-will' status of my employment.").

[5] *See* Salt Creek's motion, Dkt. No. 36-10, Exhibit C-1, p. 2 "MY DECISION TO CONTINUE EMPLOYMENT AFTER RECEIPT OF THIS AGREEMENT IS MY ACCEPTANCE OF THE TERMS AND CONDITIONS OF THE AGREEMENT AND MY AGREEMENT TO ARBITRATE DISPUTES.

Mexico conflicts of law principles, Texas law determines whether a valid arbitration agreement exists that Salt Creek is entitled to enforce. *See Id.*

Alternatively, in the absence of a specific choice of law provision[6] and if the rules regarding specific types of contracts or specific issues in contract do not supply the answer, New Mexico courts will apply the law of the state has the most significant relationship to the transaction and the parties. *Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1172 (N.M. 2008). The factors courts consider include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* at 1172-73. A court must consider both the number of contacts in a given jurisdiction the quality of those contacts. *Id.* at 1173.

Here, Texas clearly has the most significant relationship to the arbitration agreement between Kestrel and Plaintiffs. Kestrel is domiciled and incorporated in Texas. Kestrel hired Plaintiffs to work in Reeves County, Texas. Dkt. No. 36, p. 3. Plaintiffs accepted this employment (and the arbitration provision) by commencing employment in Texas, and they performed work for Kestrel in Texas and New Mexico. Bock is a resident of Missouri and is a resident of Oklahoma. *See, e.g.*, Kestrel's motion to compel arbitration, Dkt. No. 41-1, p. 22 of 54 & p. 49 of 54.  Taken as a whole, Texas has the most significant relationship to the arbitration agreement between Kestrel and Plaintiffs. Thus, the "substantial relationship" test also militates in favor of applying Texas law.

    **2.**    **Texas Law Would not Read Kestrel's Agreement to Cover Claims Against Salt Creek.**

"Who is bound by an arbitration agreement is normally a function of the parties' intent, as

---

[6]    Kestrel's arbitration agreement does not contain an explicit choice of law provision.

expressed in the agreement's terms." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). When attempting to compel arbitration, the moving party must first establish the existence of a valid and enforceable arbitration agreement. *Id.* The next step a party must establish is that the claims at issue fall within the scope of the arbitration agreement. *Id.* Who is bound by an arbitration agreement a question for the first step. *Id.*

A fundamental tenet of Texas contract law is that a court may neither rewrite the parties' contract nor add to its language. *Robinson v. Home Owners Mgmt. Enterprises, Inc.*, 590 S.W.3d 518, 534 (Tex. 2019). "A contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases." *Jody James*, 547 S.W.3d at 632.

(a).     Kestrel's agreement with Plaintiffs

Kestrel's arbitration agreement opens by declaring "[t]his Mutual Arbitration Agreement ('Agreement') is between *me* [Plaintiffs] and *Kestrel Field Services, Inc., formerly Kestrel Engineering, Inc. ('Company')*." Dkt. No. 44-1, p. 6 of 54 (emphasis and editor's brackets added). Section 1 of Kestrel's arbitration agreement, captioned "MUTUAL ARBITRATION AGREEMENT" continues:

> *The Company* and *I* mutually agree and contract to resolve by arbitration all past, present, or future claims or controversies, including, but not limited to, claims arising out of or related to my application for employment, employment, or termination of my employment *that the Company may have against me or I may have against: (i) the Company or its subsidiaries or affiliated entities ("Kestrel Entities"): (ii) Kestrel Entities officers, directors, employees, or agents in their capacity as such or otherwise: (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (iii) all of their successors and assigns.* All disputes covered by this Agreement will be decided by an arbitrator through individual arbitration, not by way of court or Jury trial.

Dkt. No. 44-1, p. 6 of 54 (emphasis added). This is the provision that describes *who* must arbitrate. In

no uncertain terms, the only parties included or referenced in Section 1 are Kestrel entities and Plaintiffs. No mention whatsoever, express or implied, is made of Salt Creek (or any other person or entity).

Piecing t. Kestrel directs the Court to no The language Kestrel hangs its textual hat on actually resides in Section 1(a) of the agreement, a subsection of Section 1. That subsection, captioned "Covered Claims,"

### D. Conclusion.

Salt Creek is not entitled to piggy-back on to Kestrel's arbitration agreement in order to force Plaintiffs to arbitrate their claims against Salt Creek. Allowing Salt Creek to enforce Kestrel's arbitration agreement against Plaintiffs would not result in equity – it would result in a re-write of Kestrel's arbitration agreement to give Salt Creek a benefit which Kestrel failed to secure for its client in the first place and to which Plaintiffs never agreed. For the reasons detailed above, the Court should deny Salt Creek's motion to compel arbitration.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: _____
        **/s/ Michael K. Burke**
        Richard J. (Rex) Burch
        Texas State Bar No. 24001807
        Michael K. Burke
        Texas State Bar No. 24012359
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Michael A. Josephson

                                  Texas Bar No. 24014780
                                  Andrew W. Dunlap
                                  Texas State Bar No. 24078444
                                  **JOSEPHSON DUNLAP LLP**
                                  11 Greenway Plaza, Suite 3050
                                  Houston, Texas 77046
                                  713-352-1100 – Telephone
                                  713-352-3300 – Facsimile
                                  mjosephson@mybackwages.com
                                  adunlap@mybackwages.com

                                  **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I served this document via the Court's ECF System on April 15, 2020.

                                  */s/ Michael K. Burke*
                                  **Michael K. Burke**