IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THOMAS BOCK, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>SALT CREEK MIDSTREAM, LLC,<br><br>    Defendant. | No. 2:19-CV-01163 WJ/GJF |

**DEFENDANT SALT CREEK MIDSTREAM, LLC'S AMENDED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Salt Creek Midstream, LLC ("Salt Creek" or "Defendant") files this Amended Motion to Compel Arbitration and Stay Proceedings, requesting that the Court compel plaintiff Thomas Bock ("Bock") and putative opt-in plaintiff Brett Rice ("Rice" or, collectively with Bock, "Plaintiffs") to arbitrate their claims against Salt Creek, and to stay further proceedings (including the filing of any notices of consent to join this case as party plaintiffs) pending resolution of such arbitration proceedings.

**I.    INTRODUCTION**

Plaintiffs Bock and, by filing a consent to join this lawsuit as a putative plaintiff, Rice claim they were employed by Defendant Salt Creek Midstream, LLC ("Salt Creek") and are entitled to overtime pay under the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA") for time worked during that employment. Salt Creek denies that it employed Plaintiffs. In contrast, Kestrel Field Services, Inc. ("Kestrel") acknowledges it employed Plaintiffs during the relevant time and has sought to intervene in this case. Dkt. 31. Salt Creek is Kestrel's customer. It contracted to obtain Kestrel's inspection services, which Kestrel provided through its own employees who, like Plaintiffs, signed binding agreements to resolve disputes pursuant to

individual arbitration. Kestrel hired Plaintiffs, assigned them duties, directed them to perform inspection work under its contract with Salt Creek or its affiliate, and paid them for that work.

But Bock did not sue Kestrel. Instead, he sued only Salt Creek and asserted a putative class and collective action. That choice was premised on a strategic calculation: to avoid his arbitration agreement with Kestrel. He cannot, however, evade his contractual obligation.

Under the doctrine of equitable estoppel, the Court should compel Plaintiffs to arbitrate their claims against Salt Creek because, notwithstanding Bock's artful omission of any mention of Kestrel in his Complaint, his claims – as well as those of Rice, should he be permitted to participate in this case – depend on establishing substantially interdependent and concerted misconduct by Kestrel and Salt Creek, and the terms – including the payment terms that he now puts at issue – of his employment relationship with Kestrel. Plaintiffs' refusal to individually arbitrate their overtime claims renders their arbitration agreements with Kestrel meaningless. Equity requires otherwise.

## II. PROCEDURAL BACKGROUND

On December 11, 2019, Bock filed his Original Class and Collective Action Complaint. Dkt. 1. On February 21, 2020, Bock filed a Notice of Filing of Notices of Consent, attaching a Consent to Join Wage Claim ("Rice Consent") purportedly signed by Brett Rice. Dkt. 17.[1] Salt Creek timely filed its First Amended Answer on February 6, 2020. Dkt. 18. The Court held an initial Rule 16 hearing on March 11, 2020 and entered a briefing schedule for threshold motion practice. Dkt. 25, 26. On March 16, 2020, Plaintiffs filed their Motion for Conditional Certification and Notice. Dkt. 30. On March 18, 2020, Kestrel filed its Motion to Intervene. Dkt. 31.  On March 25, 2020, Salt Creek filed its Motion to Compel Arbitration and Stay Proceedings (Dkt 36), which

---

[1] The Court has not yet ruled on conditional certification of the putative collective action. However, because the Rice Consent has been filed, Defendant, in this Motion, also moves to compel arbitration of the overtime claims of Rice, as if he were a party plaintiff asserting the same claims as Bock. In doing so, Defendant does not admit, and continues to deny, that Rice is similarly situated to Bock or that conditional certification is appropriate.

it amends through this pleading. In its Motion to Intervene, Kestrel provides evidence establishing that: (i) it employed and paid Bock for the time worked and for which Bock now seeks overtime, and (ii) Bock entered into an arbitration agreement covering the wage and hour claims relating to his employment that resulted in him providing services with respect to Salt Creek. Attached to Kestrel's Motion to Intervene is its Answer and Counterclaim and its Motion to Compel Arbitration, which Kestrel states it contemplates filing once its intervention is granted. Dkt. 31 at 1 n. 1, 8 n. 14 & Exhs. A, D.

## III.     RELEVANT FACTS

### A.     Salt Creek Contracted with Kestrel to Provide Inspection Services.

Salt Creek is a midstream operator in the energy industry. Dkt. 36 at Exh. A, Declaration of Shawn Witt, at ¶ 3. It operates cryogenic processing facilities, gas and crude gathering and long-haul pipelines, compression and treating facilities as well as water gathering and disposal services. *Id*. To expand its transportation capacity, in 2018, Salt Creek commenced the construction of a significant pipeline in west Texas and southeast New Mexico. *Id*. Salt Creek contracted with Kestrel to obtain certain inspection and related quality assurance services in connection with that project. Specifically, Salt Creek and Kestrel entered into a Short-Form Master Service Agreement on December 28, 2019 (the "MSA"), in which Salt Creek could request Kestrel:

> to perform work, provide items of equipment, machinery, tools, materials or supplies, lease to [Salt Creek] items of equipment, machinery or tools, and provide reports or test results of work performed (collectively, "Services"), all at or near [Salt Creek's] manufacturing facility in Reeves County, Texas, or at such other facilities owned or operated by [Salt Creek] ….

Dkt. 36 at Exh. A, Declaration at Att. A-1 (MSA), § 1.1. To perform the Services, Kestrel would "provide all labor" and "use such methods, appliances, supervision and inspection as required to ensure the safe and satisfactory performance of the Services." *Id*. at § 4.4.

The parties also made agreements with respect to the individuals whom Kestrel used to perform the Services. "All workers that [Kestrel] . . . bring[s] onto [Salt Creek's] premises or use[s] to perform the Services shall be deemed employees of [Kestrel]." *Id*. at § 4.1. Further, Kestrel "retain[s] the sole right to hire and fire its employees" and "shall fully responsible for and have the sole and exclusive control of its employees." *Id*. at §§ 4.3, 9.21. Additionally, the MSA required that Kestrel shall "keep all records with regard to its employees as required by law" and "be responsible for and shall timely pay all payrolls and payroll taxes." *Id.* at § 4.7. Kestrel also agreed to certain indemnification provisions, including with respect to claims by its employees. *Id.* at § 5.0. Consistent with that indemnification, it "expressly agrees that [Kestrel] … shall comply with and abide by, all the laws, rules, regulations . . . of the United States and of the state . . . wherein the Services are to be performed." *Id.* at § 9.10.

In accordance with the MSA, Salt Creek requested that Kestrel provide such inspection services, from time to time. *Id.*, Declaration at ¶ 5. Kestrel invoiced Salt Creek for its services, which were performed by Kestrel through its employees (or possibly such other individuals that Kestrel engaged and directed). *Id*. Salt Creek did not direct or pay Kestrel employees for any work they performed on Kestrel's behalf, pursuant to the MSA. *Id.*

**B.    Kestrel Hired Plaintiffs, Who Entered into Agreements to Arbitrate all Employment Disputes.**

As set forth in Kestrel's Motion to Intervene and accompanying affidavit, and with respect to Rice in the Amended Declaration of David Clarke attached to Kestrel's Motion to Compel Arbitration and Stay Proceedings, Kestrel hired Plaintiffs as at-will employees. Dkt. 31 at Exh. B, ¶¶ 7-9 & B-3; Dkt. 44-1, Amended Declaration of David Clarke, at ¶¶ 9-12. In connection with Bock's hiring, Kestrel and Bock entered into a Mutual Arbitration Agreement-Kestrel Field Services, Inc. on April 1, 2019 (the "Bock Arbitration Agreement"). Dkt. 31 at Exh. B, ¶¶ 4, 9 &

4

Exh. B-1. Likewise, in connection with Rice's hiring, Kestrel and Rice entered into a Mutual Arbitration Agreement-Kestrel Field Services, Inc. on June 9, 2019 (the "Rice Arbitration Agreement" and, collectively with the Bock Arbitration Agreement, the "Arbitration Agreements"). Dkt. 44-1 at ¶¶ 4, 12 & Exh. C-1. Kestrel provided each Plaintiff a time sheet and directed him to submit it to Kestrel each pay period. Dkt. 31 at Exh. B-3 (Dkt. 31-2 at 17); Dkt. 44-1 at Exh. C-3. Kestrel then directed each Plaintiff to provide certain services on its behalf, pursuant to the MSA (or, for Rice, pursuant to an MSA with Salt Creek's affiliate). Dkt. 31 at Exh. B, ¶ 10; Dkt. 44-1 at ¶ 10. Bock worked for Kestrel from early 2019 to November 2019, and Kestrel paid him for that work. Dkt. 31 at Exh. B, ¶ 10. Rice worked for Kestrel from June 2019 to August 2019, and Kestrel paid him for that work. Dkt 44-1 at ¶ 14.

Salt Creek did not, on the other hand, hire Plaintiffs as employees or pay them for their services. Dkt. 36 at Exh. B, Declaration of Lasen McGettigan, at ¶ 4. The only services Plaintiffs provided at Salt Creek's premises were done on behalf of Kestrel, in accordance with the MSA. Hence, all time for which Plaintiffs now claim they are due overtime compensation was time worked for Kestrel, arising from their Kestrel employment, and for which Kestrel paid them.

Salt Creek has made a demand on Kestrel for indemnity and defense of the claims asserted in this litigation. Dkt. 36 at Exh. A, at ¶ 6.

## IV. SUMMARY OF ARGUMENT

Plaintiffs agreed to arbitrate claims related to their employment with Kestrel, including wage and hour claims. Plaintiffs' claims against Salt Creek relate to, and depend upon, their Kestrel employment – at all times worked for which they now seek overtime pay, they were working as Kestrel employees. Although Salt Creek, on whose worksite Plaintiffs allegedly performed their inspection services, is not a signatory to Plaintiffs' Arbitration Agreements, the Court can and should compel Plaintiffs to arbitrate their claims. New Mexico recognizes that a signatory to an

arbitration agreement is equitably estopped from avoiding arbitration against a non-signatory when he must either rely on the terms of the agreement in making his claims *or* he alleges substantial interdependence and concerted misconduct by the non-signatory and another signatory. Otherwise, the parties' agreement to arbitrate would be meaningless. Here, although Plaintiffs go to pains to avoid mention of Kestrel in the Complaint, they cannot deny that, as established by evidence, their claims against Salt Creek depend upon the terms of their employment with Kestrel and on their showing interdependent and concerted conduct by Kestrel and Salt Creek. Kestrel, after all, was their W-2 employer and the entity that hired them, assigned them to work pursuant to its MSA with Salt Creek or its affiliate, and paid them for the work that, through this lawsuit, Plaintiffs have now put at issue. Enforcing Plaintiffs' commitment to arbitrate is appropriate despite Plaintiffs' failure to sue Kestrel, and all the more appropriate now that Kestrel has sought to intervene to protect its rights as Bock's employer (and, by extension, as Rice's employer), including its right to enforce the Arbitration Agreement.

**V.      ARGUMENT**

      **A.     Plaintiffs Entered into Valid Agreements to Arbitrate Claims Arising Out of or Related to Their Employment with Kestrel.**

Both federal and New Mexico law reflect a public policy in favor of arbitration. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994) ("There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."); *United Tech. & Res., Inc. v. Dar Al Islam,* 1993-NMSC-005, ¶ 11, 115 N.M. 1, 846 P.2d 307, 309 ("The legislature and the courts of New Mexico have expressed a strong policy preference for resolution of disputes by arbitration.") (quotation omitted). Section 2 of the Federal Arbitration Act ("FAA") provides: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ...

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An arbitration agreement must be validly formed pursuant to state contract law principles to be enforceable under the FAA. *Patterson v. Nine Energy Serv., LLC*, 355 F. Supp. 3d 1065, 1089 (D.N.M. 2018). Under New Mexico law, "[a] legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent." *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 6, 137 N.M. 57, 107 P.3d 111, 14 (quotation omitted).

Here, Plaintiffs entered into valid agreements to arbitrate. As demonstrated in Kestrel's Motion to Intervene, as well as in the Amended Clarke Declaration, Kestrel offered to enter into the Arbitration Agreements as a condition of its employment offer to each Plaintiff, and each Plaintiff accepted, as reflected by his execution of an Arbitration Agreement and subsequent employment by Kestrel. Dkt. 31, Exh. B at ¶¶ 8-9 & Exh. B-1; Dkt. 44-1 at ¶¶ 10, 12 & Exh. C-1. The Agreements were supported by consideration, including the parties' mutual promises to submit disputes to arbitration. Hence, the existence of valid and enforceable agreements has been established. As Kestrel has further established, the scope of the Arbitration Agreements is broad and would cover any wage and hour claims, including those alleged in the Complaint if they were brought against Kestrel. *See* Dkt. 31 at 2-5 & accompanying exhibits.

    **B.    Plaintiffs Are Equitably Estopped from Denying Arbitration of Their Overtime Claims, Arising Out of Their Employment by Kestrel, With Non-Signatory Salt Creek.**

        **1.    New Mexico Law Permits Non-Signatories to Compel Arbitration Based on Equitable Estoppel.**

Although Salt Creek is not a signatory to the Arbitration Agreements, the United States Supreme Court has recognized that non-signatories may compel signatories to arbitrate if state contract law provides a basis to do so, including through "traditional principles" such as estoppel.

*Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009). New Mexico law allows a non-signatory to an arbitration agreement to enforce a signatory's obligation to arbitrate based on the doctrine of equitable estoppel in two circumstances: "(1) when a signatory to the arbitration agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.*, No. A-1-CA-35852, 2019 WL 1231408, at *6 (N.M. Ct. App. Feb. 4, 2019) (unpublished) (quoting *Horanburg v. Felter*, 2004-NMCA-121, ¶ 17, 136 N.M. 435, 99 P.3d 685).

The New Mexico Court of Appeals recently applied equitable estoppel to compel a former employee who had entered into an agreement to arbitrate with her employer to arbitrate claims against a non-signatory defendant. In *Mulqueen*, the plaintiff brought claims against both her employer, with whom she had entered into the arbitration agreement, and non-signatory shareholders of the employer. *Mulqueen,* 2019 WL 1231408, at *1. Compelling arbitration, the court explained:

> Plaintiff signed the Agreement, agreeing to arbitrate any disputes that arose from her employment relationship with [her employer], but now seeks to avoid arbitrating many of her claims by raising those claims against the Shareholder Defendants, rather than against [her employer] itself. Having adopted the doctrine of equitable estoppel in the arbitration context..., we apply it here, where the non-signatory is seeking to bind the signatory to the Agreement.

*Id.* at *6 (finding both factors permitting the application of equitable estoppel: reliance on existence and terms of agreement and factually intertwined allegations of misconduct by signatories and non-signatories); *see also Lawit v. Maney & Gordon, P.A.*, 2014 WL 11512612, *6 (D.N.M. Jan. 17, 2014) (concluding that former employee was equitably estopped from denying arbitration with non-signatory partners of law firm which entered arbitration agreement with plaintiff, where

employee alleged "substantial interdependence and concerted misconduct by both [the law firm] and [the law firm partners], such that arbitration between only the signatories to the contract would be meaningless") (internal alterations and quotations omitted); *La Frontera Center, Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1219 (D.N.M. 2017) ("the Court estops [the plaintiff] from avoiding arbitration of each of its claims against [the non-signatory defendants], because those claims are interdependent with, if not indistinct from, the disputes that [the plaintiff] agreed to arbitrate – namely, disputes arising from its 'business relationship' with [the signatory defendant]").

>    **2.    Plaintiffs' Claims Depend Upon Their Showing "Substantially Interdependent and Concerted Misconduct" By Their Employer Kestrel and Its Customer Salt Creek, as well as on Their Employment Agreements with Kestrel.**

Plaintiffs' efforts to isolate their claims against Salt Creek from their employment with Kestrel fail in light of the facts about the time for which they seek overtime pay. The evidence establishes that:

- Salt Creek is a customer of Kestrel and contracted with Kestrel to provide certain inspection services, which Kestrel performed using its employees such as Plaintiff. *See* Dkt. 36 at Exh. A & Att. A-1 (MSA).

- Kestrel hired Plaintiffs as its W-2 employees, assigned Plaintiff to provide services to Salt Creek on its behalf pursuant to the MSA, and paid Plaintiffs for the time they worked. *See* Dkt. 31 at Exh. B; Dkt. 44-1.

- As a condition of their employment, Plaintiffs agreed to arbitrate all disputes, including those involving wages and alleged overtime entitlements, arising from or related to their employment with Kestrel. Dkt. 31 at Exh. B-1; Dkt. 44-1 at Exh. C-1.

- Plaintiffs only provided services with respect to Salt Creek or its affiliate as a result of their employment with Kestrel, and Plaintiffs were working as Kestrel's employees during the time for which they seek overtime pay in this lawsuit. Dkt. 31 at Exh. B; Dkt. 36 at Exhs. A – B; Dkt. 44-1.

While Bock alleges that "Salt Creek is the true employer of Bock," Complaint at ¶ 72, what his claim implicitly alleges is that Salt Creek is his *joint* employer, along with Kestrel. In fact,

Kestrel has moved to intervene in this lawsuit to protect its rights *as Bock's employer*, including to enforce Bock's contractual agreement to arbitrate disputes arising out of or related to his employment by Kestrel. By extension, the same allegation, and response by Kestrel, applies to Rice. This case arises out of or relates to Plaintiffs' employment – whether direct or allegedly joint – with Kestrel in its entirety. The factual and legal issues at issue in resolving the merits of their FLSA and NMMWA overtime claims – whether they were properly paid while employed by the W-2 employer that, in fact, paid them for the work at now at issue – start with Kestrel.

Courts in other jurisdictions have relied on similar articulations of the doctrine of equitable estoppel to compel signatory employees to arbitrate employment claims brought against their employers' non-signatory customers or other alleged joint employers. For example, in *Ortiz v. Volt Mgmt. Corp.*, 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017), the plaintiff signed an arbitration agreement with a staffing agency and then was assigned to work for its non-signatory customer. Rejecting the plaintiff's argument that the non-signatory's liability was not "dependent upon a finding that the staffing company [] was liable," it compelled plaintiff to arbitrate his FLSA and state law wage claims because plaintiff's statutory claims "were intimately founded and intertwined with his employment relationship with the [signatory] staffing agency." *Id.*[2]

---

[2] *See, e.g., Townsend v. Stand Up Mgmt., Inc.*, 2019 WL 3729266, *9 (N.D. Oh. Aug. 8, 2019) ("Based on Plaintiffs' numerous allegations of joint misconduct by all named Defendants, the Court holds that Plaintiffs are equitably estopped from avoiding arbitration when they have asserted Defendants engaged in substantially interconnected and concerted misconduct."); *Green v. Fishbone Safety Solutions Ltd.*, 303 F. Supp. 3d 1086, 1094-95 (D. Co. Mar. 19, 2019) (compelling a safety advisor to arbitrate claims for failure to pay overtime against the company with whom his employer contracted to provide such safety inspection services, based on his arbitration agreement with his employer); *Thompson v. Body Sculpt, Int'l, LLC*, 2018 WL 3235545, at *8 (E.D.N.Y. July 2, 2018) ("Here, plaintiffs allege that all of the defendants were their joint employers under the FLSA and as such are all liable for the purported overtime violations. In light of that position, plaintiffs are estopped from arguing that only some of the defendants can enforce the [Arbitration] Agreement") (internal citation omitted); *Bonner v. Mich. Logistics, Inc.*, 250 F. Supp. 3d 388, 397–98 (D. Ariz. 2017) (holding that plaintiff was equitably estopped from avoiding arbitration against nonsignatory defendant where plaintiff had attempted to hold defendants liable for FLSA violations under joint employer theory).

The same is true here, regardless of Bock's artful pleading. Plaintiffs' claims necessarily are premised on interdependence between Kestrel and Salt Creek, insofar as Kestrel hired, assigned, and paid Plaintiffs for the relevant time, whereas Salt Creek only engaged Plaintiffs' employer, Kestrel. Plaintiffs cannot sue Salt Creek for alleged wage underpayment without putting the pay practices of Kestrel -- the company that was actually responsible for paying them and assigning them to work on a Salt Creek project – squarely at issue.

Just last month, a court within this District compelled to arbitration a plaintiff's NMMWA overtime claims brought only against the customer of the consulting company with whom he had an independent contractor agreement including an arbitration clause, based on estoppel principles. *Goldsborough v. Newpark Drilling Fluids, LLC*, 2020 WL 619211, *1 (D.N.M. Feb 10, 2020). Applying Texas contract law, the court held that the agreement was "the basis for his work as a Mud Engineer at Defendant's wellsite, and is the main document governing the relationship between Plaintiff and [the consulting company], and Plaintiff and Defendant." *Id*. at *4. Accordingly, "any analysis of the NMMWA claims against Defendant would be based on the agreements." *Id. (citing Randle v. Metro. Transit Auth. of Harris Cty.*, 2018 WL 4701567, at *10 (S.D. Tex. Oct. 1, 2018) (in FLSA case, non-signatory could enforce arbitration clause in Plaintiff's employment agreement with third-party because the "FLSA claim must invariably rely on any employment agreements that exist.")). While Plaintiffs' Arbitration Agreements do not explicitly mention Salt Creek, Kestrel has presented facts demonstrating that the basis of Plaintiffs employment relationship included both the terms of pay and the expectation that they would provide services on Kestrel's behalf, under the MSA (or, for Rice, under a nearly identical services agreement with Salt Creek's affiliate). *See* Dkt. 31 at Exh. B, ¶¶ 7-11; Dkt. 44-1 at ¶¶ 9-12, B-2,

C-2. Indeed, Kestrel emphasizes that "[t]he sole purpose of Bock's employment with Kestrel was to provide inspection services on the Salt Creek [p]ipeline [p]roject." *See* Dkt. 31 at Exh. B, ¶ 11.

Similarly, in *Dennis v. United Van Lines, LLC*, 2017 WL 5054709, *1-2 (E.D. Mo. Nov. 1, 2017), a truck driver entered into an independent contractor agreement, which included an arbitration clause, with Holman Moving Systems ("Holman"), and thereafter performed work for United Van Lines ("United") under that Holman agreement. The plaintiff sued United, but not Holman, alleging misclassification and seeking unpaid wages. Compelling the plaintiff to arbitrate his claims, the court found that "Plaintiff's claims depend upon his classification as an independent contractor and the work he performed as a truck driver under the [independent contractor agreement] with Holman." *Id*. at *4. While the plaintiff in *Dennis* was not as strategic as Bock here in avoiding any mention of the entity with whom he entered the agreement, the record here demonstrates that, as in *Dennis*, Plaintiffs' claims against Salt Creek depends upon showing concerted misconduct between Kestrel, who hired, employed, assigned, and paid Plaintiffs, and its customer Salt Creek. *See id.*[3]

Resolution of Plaintiffs' claims necessarily depend on the terms and conditions of Plaintiffs' employment with Kestrel. Absent their agreements to arbitrate claims on an individual basis, Kestrel would not have hired Plaintiffs. As Kestrel's Declarations establish, the Arbitration Agreements were part of the overall agreements that governed Plaintiffs' employment, and pursuant to which they worked, were assigned to Kestrel's Salt Creek project (or, for Rice, to a Salt Creek affiliate's project), and were paid for the time at issue in this case. The Tenth Circuit

---

[3] *See also Arnold v. DirecTV, Inc*., 2013 WL 6159456, at *3-4 (E.D. Mo. Nov. 25, 2013) (compelling arbitration of FLSA claims against non-signatory alleged joint employer, based on plaintiffs' arbitration agreements with their W-2 employers, who were not named defendants, where plaintiffs alleged joint employment and conduct in violation of the FLSA, explaining that the arbitration agreements would be "practically eviscerated" if the non-signatory defendant were not permitted to compel arbitration).

12

has reminded courts that "[f]ocusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *Chelsea Family Pharmacy v. Medco*, 567 F.3d 1191, 1198 (10th Cir. 2009) (citing cases). In considering the "substance over form" of the Complaint, it is evident that Plaintiffs' claims rely on, relate to, and arise out of, the employment agreements between Kestrel and Plaintiffs. *Id.* The doctrine of equitable estoppel thus should be applied here, and Plaintiffs should not be allowed to ignore the Arbitration Agreements.

### 3. Plaintiffs Cannot Avoid the Facts Simply by Failing to Mention Kestrel in The Complaint.

Consistent with Bock's attempt to avoid his arbitration commitment by suing only Kestrel's customer, it can be expected that Plaintiffs will claim that they are immune from arbitration because Bock avoided making any allegations of substantially interdependent and concerted misconduct between Kestrel and Salt Creek.[4] But such evasive pleading does not immunize Plaintiffs from their arbitration commitment, as the doctrine of equitable estoppel was developed to avoid the unfair result Plaintiffs seek. While a joint employer may be held jointly and severally liable for unpaid overtime under the FLSA, that fact should not give an employee license to disclaim the undisputed facts of his employment relationship, as established by evidence, simply to avoid his arbitration agreement.[5] The Court should decline to reward Plaintiffs' creative pleading in avoiding any reference to Kestrel. "To allow Plaintiff to effectively avoid the arbitration provision by naming [a non-signatory] as defendant[] undermines our statewide policy

---

[4] If Kestrel's motion to intervene is granted, this argument is mooted. Plaintiffs' allegations will apply to Kestrel, as well as Salt Creek, thus establishing in the pleadings allegations of substantially interdependent and concerted misconduct.

[5] The FLSA provides for joint and several liability of all employers to ensure that employees have recourse for their full wages, particularly if one employer is insolvent. If Plaintiffs' goal is simply to ensure satisfaction of any judgment, choosing to sue only Salt Creek and not Kestrel does not advance that goal. This is particularly true insofar as Salt Creek denies being Plaintiffs' employer, whereas Kestrel does not.

favoring arbitration and renders meaningless the purpose of the arbitration clause in the Agreement." *Mulqueen*, 2019 WL 1231408, at *7 (permitting non-signatories to enforce plaintiff's arbitration agreement based on equitable estoppel); *see also U.S. for the use of HDR Enterprises, LLC, v. MV Industries, Inc.*, 2010 WL 1162661, at *11 (D.N.M. Jan. 1, 2010) (footnote omitted) ("carrying Plaintiffs argument [that a non-signatory cannot compel a signatory to arbitrate] to its logical conclusion would create the unjust situation in which any party could avoid an arbitration agreement by merely suing an employee or agent of the principal").

In a widely cited case, the Fifth Circuit explained the unfairness of allowing a plaintiff to name a non-signatory defendant, rather than the signatory defendant, where the claim is premised upon purported interdependent and concerted misconduct:

> [I]t would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, inter alia, of time and money because of its required participation in the proceeding. Concomitantly, detrimental reliance by that signatory cannot be denied: it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory.

*Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000).

Here, Kestrel's involvement in this matter is inevitable. Only Kestrel can provide evidence of certain factual issues key to resolving Plaintiffs' legal claims. After all, it was Kestrel, not Salt Creek, that hired Plaintiffs, assigned them duties (including with respect to work it performed pursuant to the MSA), reviewed their timesheets and paid them for their time worked. Likewise, if the Court were to allow this matter to proceed as a class or collective action (which it should not), only Kestrel could provide certain information regarding its employees who are the putative class members, including pay information.

Declining to compel Plaintiffs' claims against Salt Creek to arbitration would render any arbitration between Plaintiffs and Kestrel, as well as the Arbitration Agreement itself, meaningless. Notwithstanding Bock's decision to sue Salt Creek, apparently calculated to avoid the arbitration agreement, equity demands that Plaintiffs be held to their agreements and compelled to arbitrate their claims against Salt Creek.

### C. The Court Should Stay This Proceeding Pending Arbitration.

Section 3 of the Federal Arbitration Act provides that the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under any such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *see Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (holding that, when one of the parties petitions the Court to stay an action pending compulsory arbitration, the mandatory language of Section 3 of the FAA is binding, and it is error for the Court to dismiss the action).

Salt Creek requests a stay of this proceeding pending arbitration of Plaintiffs' claims.

### VI. CONCLUSION AND REQUEST FOR RELIEF

Salt Creek requests that the Court enter an order compelling Plaintiffs to arbitrate their claims. Further, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, Salt Creek requests a stay of this proceeding pending arbitration of Plaintiffs' claims.

        Respectfully submitted,
        HINKLE SHANOR LLP

        */s/ Thomas M. Hnasko*
        Thomas M. Hnasko
        Julie A. Sakura
        Dioscoro "Andy" Blanco
        P.O. Box 2068
        Santa Fe, New Mexico 87504
        Telephone:  505.982.4554

        Facsimile:   505.982.8623
        thnasko@hinklelawfirm.com
        jsakura@hinklelawfirm.com
        dblanco@hinklelawfirm.com

        Sean M. Becker
        Christie M. Alcalá
        VINSON & ELKINS L.L.P.
        1001 Fannin Street, Suite 2500
        Houston, Texas 77002
        Telephone:  713.758.2646
        Facsimile:   713.615.5129
        sbecker@velaw.com
        calcala@velaw.com

        *ATTORNEYS FOR DEFENDANT SALT CREEK MIDSTREAM, LLC*

## CERTIFICATE OF CONFERENCE

      I certify that, on April 1, 2020 and April 2, 2020, I conferred with counsel for Plaintiffs regarding the foregoing Amended Motion to Compel Arbitration and Stay Proceedings, who stated they were opposed.

        */s/ Christie M. Alcalá*
        Attorney for Defendant

## CERTIFICATE OF SERVICE

      I hereby certify that on April 2, 2020, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF System and was automatically copied to all counsel of record through the Court's electronic filing system.

        */s/ Julie Sakura*
        Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS BOCK, Individually and
On Behalf of All Others Similarly Situated,

    Plaintiff,

v.

SALT CREEK MIDSTREAM, LLC,

    Defendant.

No. 2:19-CV-01163 WJ/GJF

## ORDER GRANTING DEFENDANT SALT CREEK MIDSTREAM, LLC'S AMENDED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING RESOLUTION OF ARBITRATION

Pending before the Court is Defendant Salt Creek Midstream, LLC's ("Salt Creek") Amended Motion to Compel Arbitration and Stay Proceedings Pending Resolution of Arbitration. The Court has considered the motion, the response, all other relevant filings, and the applicable law and finds that the motion should be granted.

Accordingly, it is hereby ORDERED that Salt Creek's Amended Motion to Compel Arbitration and Stay Proceedings is GRANTED; Plaintiff Thomas Bock and putative opt-in plaintiff Brett Rice are ORDERED to pursue their claims in arbitration, if at all; and this proceeding (including the filing of any notices of consent to join this proceeding) is STAYED pending the conclusion of such arbitration.

SIGNED this ____ day of _____, 2020.

_____
Gregory J. Fouratt
United States Magistrate Judge