# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THOMAS BOCK, on behalf
of himself and all others similarly situated,

    Plaintiff,

    v.                                           Civ. No. 19-1163 WJ/GJF

SALT CREEK MIDSTREAM LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS PARTY
## AND TOLLING CLAIMS OF DISMISSED PARTIES FOR 60 DAYS

THIS MATTER comes before the Court upon a Motion to Dismiss Party, filed on November 10, 2020 by Defendant Salt Creek ("Salt Creek") **(Doc. 108).** Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is well-taken and is granted in that Opt-in plaintiffs Winfrey Garrett and Danny Day (collectively with other opt-in plaintiffs) shall be dismissed without prejudice from this lawsuit under Rule 21.

### BACKGROUND

This is a case alleging a failure to pay overtime under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). Plaintiff Thomas Bock ("Bock") alleges that Salt Creek Midstream, LLC ("Salt Creek" or "Defendant") failed to pay Bock and others similarly situated overtime for hours worked in excess of forty in a week. Salt Creek is a midstream operator in the oil and gas industry. Kestrel Field Services ("Kestrel"), a non-party, is a staffing company that furnishes skilled employees to customers whose projects exceed the capability of their in-house workforce, including Defendant Salt Creek. Defendant

contracted with Kestrel to provide personnel qualified to inspect pipeline-related features like welding and coating. Under the contract, formally known as a Master Service Agreement, Kestrel provided Defendant with inspection services at various job sites throughout west Texas and southeast New Mexico.

The inspectors, including Bock and Brett Rice ("Rice") were hired by Kestrel as its employees. As a condition of their employment, inspectors were each required to execute a bilateral Arbitration Agreement and class action waiver. Kestrel directed the inspectors to specific job sites of Defendant to provide inspection services. Bock and other inspectors who desire to be members of a FLSA class action (hereinafter collectively "Plaintiffs") submitted their time sheets to Kestrel and were paid by Kestrel on a "day rate" which is common in the oil and gas industry, as opposed to a straight salary or an hourly wage. Kestrel did not pay its inspectors overtime, no matter how many hours they worked in a given week because it viewed the inspectors as exempt under federal and state wage-and-hour laws. This pay structure to the inspectors gave rise to the instant lawsuit.

Plaintiffs are suing only Defendant Salt Creek, Kestrel's customer, and not Kestrel, which actually hired and paid them. Plaintiffs allege that Defendant – not Kestrel – is their "true" employer and have affirmatively disclaimed the theory that Defendant and Kestrel were their "joint employers," opting instead to proceed on the single legal theory that Defendant was their actual employer and that its pay structure and policy violated both the Fair Labor Standards Act and the New Mexico Minimum Wage Act.  The inspectors, including Bock and Rice, were hired by Kestrel as its employees. As a condition of their employment, inspectors were each required to execute a bilateral Arbitration Agreement ("AA") and class action waiver. Kestrel directed the inspectors to specific job sites of Defendant to provide inspection services.

On September 22, 2020, the Court adopted the entirety of the proposed findings and recommended disposition of United States Magistrate Judge Gregory J. Fouratt regarding several motions filed by Defendant Salt Creek and Intervenor Kestrel, overruling these parties' objections to Judge Fouratt's findings. (Doc. 100). These are the Court's pertinent rulings, based on the Court's consideration of the Arbitration Agreement ("AA"):

- Plaintiffs cannot be compelled to arbitrate their claims against Defendant, based on §1 of the AA, because that provision would not have put the objective reader on notice that the claims, controversies, or disputes with Kestrel's customers (such as Salt Creek) fell within its scope.

- However, Plaintiffs cannot pursue their claims against Defendant in a class or collective action, based on the class action waiver provision in §3 of the AA. The waiver "is not expressed in terms of particular types of disputes, claims, or controversies between particular parties like Section 1 of the AA—it applies to anyone."

Doc. 100 at 19.

In light of these rulings, the Court then denied Plaintiff's Motion for Conditional Certification as moot. Doc. 102.

The Court turns now to the facts relevant to this motion. In addition to Thomas Bock and Brett Rice, who were supplied by Kestrel to work for Defendant, there are presently three other putative plaintiffs in this lawsuit who were employed by other staffing companies: Michael Pierson, Winfrey Garrett and Danny Day ("Pierson," "Garrett" and "Day"). On October 21, 2020, the parties filed a Joint Status Report (Doc. 103) pursuant to a Court Order, and appeared at a scheduling conference the following week before Judge Fouratt (*see* Doc. 104, Clerk's Min.). The parties have agreed that Michael Pierson is subject to a binding arbitration agreement with his direct employer (not Kestrel) and that he will be withdrawing his opt-in notice—leaving Garrett and Day as remaining putative plaintiffs.

Defendant contends that Garrett and Day ("opt-in plaintiffs") are no longer properly in the case and should be dismissed as opt-in plaintiffs as a "presumptive consequence" of the Court's ruling that the named plaintiff (Bock) cannot proceed in a class or collective action. Instead, they (and any others who want to join them) would have to file their own separate lawsuit. Plaintiffs claim that Garrett and Day are properly in this lawsuit because the Court's rulings were based on the Kestrel Arbitration Agreement and so *only* Bock and Rice are prevented from pursuing their claims against Salt Creek in a class or collective action. They maintain that Garrett and Day should continue to pursue their claims on behalf of themselves and all others similarly situated to them, bringing this case back to the potential class action posture it was when the case began. Plaintiffs advocate severing the case into two tracks, with Bock and Rice litigating their individual claims on one track, and Garrett and Day with their class claims on the other.

## DISCUSSION

On motion or on its own, a court may either drop or sever a misjoined party on just terms. Fed. R. Civ. P. 21. Rule 21 allows a court to avoid dismissing an entire case when a party has been misjoined by either "adding or dropping" a party, or severing any claim against a party. When a court uses its discretion to "drop" a party under Rule 21, that party is dismissed from the case without prejudice." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006). *See Nasious v. City & Cty. of Denver-Denver Sheriff's Dep't*, 415 F. App'x 877, 881 (10th Cir. 2011) (decisions whether or not to sever are reviewed for abuse of discretion). A court may consider various factors in making this decision, such as: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are

required for the separate claims. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *Tarin v. RWI Const., Inc.*, No. CV 12-145 CG/LAM, 2012 WL 12354227, at *3 (D.N.M. July 13, 2012) (federal trial courts have wide discretion with regard to motions to bifurcate or sever claims) (citing *United States ex rel. Bahrani v. ConAgra, Inc.,* 624 F.3d 1275, 1283 (10th Cir.2010).[1]

Unlike Bock or Rice, neither Garrett nor Day was hired, employed or paid by Kestrel or assigned to work for it at a Salt Creek project. According to Defendant (and unrebutted by Plaintiffs), Day was employed by ACI while Garrett was employed by a company called Cypress-TIR, which may have acted as a sub-contractor for a joint venture in which an affiliate of Defendant had an interest. Also, Garrett and Day are *each* subject to separate and different arbitration agreements which will present different factual allegations and defenses, and lead to a motions practice that is quite different from the round of motions filed in the current *Bock* lawsuit.

**I.     Prejudice**

    A.     Limitations Period

Defendant claims that the opt-in plaintiffs would not be prejudiced by dismissal because the limitations period for an opt-in plaintiff's FLSA claims is tolled upon the filing of a consent to participate in an alleged collective action. *See* 29 U.S.C. §256(b). Garrett filed his notice of consent in this action on April 2, 2020 (Doc. 51) and Day filed his on June 10 (Doc. 79)—and these filings tolled the running of limitations for their claims against Salt Creek. The statute of limitations does

---

[1] At the October 27, 2020 scheduling conference, the parties agreed that the matter of proceeding with remaining opt-in plaintiffs "would best be resolved by litigating a Federal Rule of Civil Procedure 21 Motion (Misjoinder and Nonjoinder of Parties)." Doc. 104 at 2 (Clerk's Min.). There is little discussion of specific Rule 21 factors in the briefs other than prejudice. Defendant offers some discussion which could be considered related to the fifth factor, but there is no discussion on the other factors. The Court recognizes that these factors are not set in stone, nor are they mandatory for the Court to consider, but at any rate the Court will not make counsel's arguments for them and so limits discussions to those raised. *See Perry v. Woodward,* 199 F.3d 1126, 1141 n. 13 (10th Cir.1999) (court "will not craft a party's arguments for him").

not resume unless and until they are dismissed from a putative collective action. *See Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1385 (11th Cir. 1998); *Collins v. Vill. of Palatine, Illinois*, 875 F.3d 839 (7th Cir. 2017) (holding that limitations period for motorist to file suit resumed when district court dismissed earlier proposed class action with prejudice before ruling on class certification motion). Defendant maintains that this tolling permits dismissal of Garrett and Day's claims since they, and other opt-in plaintiffs, would not be prejudiced by a time bar. *See*, *e.g.*, *Nasious*, 415 F. App'x at 881 (finding that district court abused its discretion when it dismissed, rather than severed, misjoined claims and parties without taking into consideration whether the dismissed claims would thereafter be time-barred). Defendant further suggests providing Garrett and Day with an additional 30-day tolling period for their individual claims before they initiate a new proceeding.

Plaintiffs disagree, claiming that they *are* prejudiced by dismissal, in contrast to severance which would preserve the claims of Garrett and Day as a matter of right and make tolling unnecessary. Relying on Fed.R.Civ.P. 15, they contend that a separately filed claim (as opposed to an amendment or supplementary pleading) would not relate back to a previously filed claim, apparently insinuating that a limitations issue would exist if claims of opt-in plaintiffs were dismissed instead of severed. The Court was puzzled with Plaintiffs' reference to Rule 15 (as was Defendant, describing Plaintiffs' Rule 15 argument as a "red herring," *see* Doc. 110 at 2) because there is no reason for Rule 15 to come into the picture at all if tolling is available to preserve these claims.

Defendant is correct that it is appropriate—and in fact standard procedure—for a court to toll claims of opt-in plaintiffs in FLSA collective actions for a period of time after they are dismissed without prejudice so that they may file new lawsuits. *See* Doc. 108 at 7, n.3 (collecting

cases where courts toll dismissed opt-in plaintiffs' claims in order to give them time to file new lawsuits).[2]  The wage and hour claims of Garrett and Day (along with any other opt-in plaintiffs) were tolled immediately upon the dates these plaintiffs filed their consents. That tolling, together with a post-dismissal "grace period" provided by the Court would preserve the opt-in plaintiffs' claims going back to those dates and avoids the very threat and "prejudice" Plaintiffs claim would exist if Garrett and Day are dismissed under Rule 21.

The Court also agrees with Defendant that Plaintiffs' reliance on Rule 15 raises a "contrived prejudice."  Interestingly, Plaintiffs do not claim to be prejudiced by tolling itself (and could not do so) and so instead they claim to be prejudiced by application of a federal rule of civil procedure that is not relevant where tolling is applied to preserve the claims of opt-in plaintiffs.

B.   Dismissal of Opt-in Plaintiffs

Defendant contends that courts are generally required to dismiss claims of remaining opt-in plaintiffs when named plaintiffs are precluded from pursuing their claims in a collective or class proceeding but remain in the litigation to pursue their individual claims. *See, e.g., Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 281 (5th Cir. 2016) (when a court declines to certify a proposed collective action, it "*must* dismiss the opt-in employees, leaving only the named plaintiff's original claims," and the original plaintiffs then "proceed to trial on their individual claims") (emphasis in original); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008) (Where court grants employer's motion to decertify collective action, court must then

---

[2] *See, e.g.*, *Davenport v. Charter Commc'ns*, LLC, 2017 WL 878029, at *11 (E.D. Mo. Mar. 6, 2017) (tolling the statute of limitations for dismissed opt-in plaintiffs for 60 days following the decertification of a FLSA collective action); *Reyes v. Texas Ezpawn, L.P.*, 2007 WL 101808, at *7 (S.D. Tex. Jan. 8, 2007) (same, for 30 days); Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1155 (D. Minn. 2005) (same, for 60 days); *Tapia v. DIRECTV, Inc.*, 2016 WL 9777179, at *3 (D.N.M. June 22, 2016) (collecting cases in procedural background in which opt-in plaintiffs' FLSA claims were dismissed without prejudice following decertification and thereafter tolled for 60-90 days).

dismiss the opt-in employees, leaving only the named plaintiff's original claims); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008)); *id.* at 281 & n.28 ("Our sister circuits have similarly explained that '[w]hen a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs.'") (citing *Alvarez v. City of Chicago,* 605 F.3d 445, 450 (7th Cir. 2010).[3]

Plaintiffs find fault with the cases relied on by Defendant, claiming that they are not relevant because most of them involve rulings on motions to decertify a class at the second stage of proceedings. Doc. 108 at 4. *See Thiessen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) (describing Tenth Circuit's "two-step" approach to conditional certification in FLSA cases).  They note that in contrast to those cases, there has been no finding here by the Court that plaintiffs are not similarly situated and no ruling decertifying the class. Plaintiffs urge the Court not to be persuaded by the cases cited by Defendant because the impact of decertification is not the same as finding that a named plaintiff cannot pursue a collective action.  The Court is not convinced that this is a distinction with a difference.  In either situation, the result is the same: the named plaintiffs cannot pursue their claims in a class or collective action.  The mere fact that the putative class was never certified does not in itself require that Garrett and Day remain in this lawsuit to litigate a collective action.  Moreover, there are at least two cases cited by Defendant in their argument for Rule 21 dismissal where the courts' rulings did not involve motions to decertify a class at the second stage of proceedings.  *See, e.g., Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir.

---

[3] Defendant cites to other cases for the same proposition in its motion, for example: *O'Brien v. Ed Donnelly Enter., Inc.,* 575 F.3d 567, 573 (6th Cir. 2009); *Fox v. Tyson Foods, Inc*., 519 F.3d 1298, 1301 (11th Cir.2008) (affirming decertification of an FLSA collective action, dismissal of the opt-in plaintiffs, and severance of each of the named plaintiffs into separate individual actions); *Nez v. Sw. Glass & Glazing, Inc.*, 2016 WL 10516171, at *3 (D.N.M. Dec. 22, 2016) (explaining that, upon decertification, the opt-in plaintiffs are dismissed without prejudice, and the "class representatives—i.e., the original plaintiffs—proceed to trial on their individual claims."); *Swartz v. DJ Eng'g, Inc*., No. 12-CV-01029-DDC-KGG, 2015 WL 4139376, at *12 (D. Kan. July 9, 2015) ("When a district court decertifies an FLSA class, it must dismiss claims asserted by the opt-in plaintiffs without prejudice and permit the class representative to proceed to trial on their individual claims."). *See* Doc. 108 at 4.

2008) (plaintiffs had not yet moved for conditional certification at time of court's ruling); *Portillo v. Perm. Workers, L.L.C*., 662 Fed. Appx. 277, 281 (5th Cir. 2016) (district court erroneously dismissed the named plaintiff's individual claims after finding that he could not act as a collective action's lead plaintiff, before class was conditional certified). Thus, dismissal of opt-in plaintiffs is not necessarily tied to the stage of litigation proceedings in which the ruling is made, or whether the class had been certified.

Plaintiffs nevertheless insist that Garrett and Day should simply be substituted for Bock as named plaintiffs, citing to two cases for support. The first case they rely on is *Portillo* which was cited by Defendant for a different reason (see discussion above). In that case, the district court found that Mr. Portillo was unfit to represent a collective action as a named plaintiff because he had used a fake name and social security number. The court dismissed the case in its entirety without prejudice and " indicated that a future suit with a different lead plaintiff—and Portillo as a member of the collective action—was permissible." 662 Fed.Appx. at 279.  On appeal, the Fifth Circuit noted that the district court "should not have dismissed [the case] but ought to have allowed counsel to offer another suitable plaintiff to lead the collective action." *Id*. at 281.  Plaintiffs advocate for the same result in this case, but it would not apply in this case because it is in a completely different posture.  Unlike Mr. Portillo who was allowed to continue pursuing his claims in a class action providing that he was not a named plaintiff, Mr. Bock has been explicitly precluded from pursuing their claims against Defendant in a class or collective action although he remains a property party to his own case. *See* Doc. 102 at 1.

Plaintiffs also rely on *Smith v. Guidant Global, Inc.,* where the court allowed opt-in plaintiffs to participate in discovery even though it had denied a motion for conditional certification without prejudice.  2020 WL 6793330 at *4-5 (E.D. Mich. Nov. 19, 2020).  In *Smith,*

9

the collective action allegations remained alive whereas in contrast here, the allegations in the instant *Bock* lawsuit no longer govern the case. Neither *Portillo* nor *Smith* indicate that opt-in plaintiffs may displace a named plaintiff that remains a proper party to their own lawsuit.

## II.     Delay

Plaintiffs request that the Court sever the claims of Garrett and Day rather than dismiss them. They contend that Defendant's motion to dismiss is nothing more than an attempt to delay conditional certification and escape claims of other putative class members as their limitations periods run. However, the Court agrees with Defendant: delay is inevitable whether Garrett and Day are dismissed under Rule 21to allow them to file a separate lawsuit, or whether their claims are severed. Defendant contends that severance would have consequences similar to dismissal because claims that are severed under Rule 21 "become independent actions with separate judgments entered in each." *See Chrysler Credit Corporation v. Country Chrysler, Inc.,* 928 F.2d 1509, 1519 n.8 (10th Cir. 1991); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2387 at 277 (1971 & 1990 Supp.) (claims severed under Rule 21 become independent actions with separate judgments entered in each); 3A J. Moore, *Moore's Federal Practice* ¶ 21.05[2] at 21–34–35 (1990) (same). Thus, under either scenario, opt-in plaintiffs would have to go through, as Defendant describes it, the "necessary initial phases to litigation" Doc. 110 at 3.

There are presently no allegations regarding when, where, or in what capacity these opt-ins provided services to Salt Creek (unlike the former Bock/Rice named plaintiffs).[4] It is not even clear at this point whether the opt-ins provided any services at all in New Mexico and so venue issues may be raised. Motions practice would mirror what has gone on before with regard to Bock

---

[4] Salt Creek has no record of Day or Garrett providing services in New Mexico so their claims cannot include any claim under New Mexico's wage statutes.

and Rice: potential intervenors (including companies that actually employed the opt-ins) would have an opportunity file preliminary motions such as objections to venue, failures to state claims and motions to compel arbitration or enforce class action waivers. New discovery would be necessary as well, since the allegations underlying this *Bock* lawsuit are so factually distinct. Even the motion for conditional certification that had been filed by Plaintiffs (Doc. 30) and rendered moot by this Court's rulings, would have to be refitted to suit the claims and allegations of Garrett, Day and other plaintiffs who decide to join that collective action.

Plaintiffs emphasize that this Court's previous rulings adopting Judge Fouratt's proposed findings and conclusions pertain only to Bock and Rice, yet they downplay the fact that severance and dismissal have similar consequences: they must "start from scratch" under both scenarios.

## CONCLUSION

In sum, the Court finds and concludes that Garrett and Day (and any other putative class plaintiffs who may opt-in) are no longer properly in this case, pursuant to Rule 21. Severance offers Garrett and Day no procedural advantage, while dismissal does not prejudice them or any future opt-in plaintiffs. Further, allowing Garrett and Day to proceed in a proposed class action alongside the individual claims of Bock and Rice would be unnecessarily cumbersome, certainly inefficient, and present potential delay to the litigation of the individual claims that remain in the *Bock* lawsuit. In short, there is every reason to dismiss Garrett and Day without prejudice under Rule 21, and no reason to allow them to remain in this lawsuit with severed claims in order to reach separate judgments.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Party (**Doc. 108**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order;


**IT IS FURTHER ORDERED** that the claims of Garrett and Day, and other plaintiffs who have opted into the potential class action lawsuit, are hereby TOLLED FOR A PERIOD OF SIXTY (60) DAYS.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE